# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00939-SCT

*BENNY JOE STEVENS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/4/1999 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT M. RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JUDY T. MARTIN |
| | MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY | CLAIBORNE McDONALD |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | APPLICATIONS FOR LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 12/11/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Benny Joe Stevens was charged with the shooting deaths of his ex-wife, her husband and two children.  Stevens was convicted of four counts of capital murder on December 4, 1999, and sentenced to death on all four counts.  The convictions and sentences were affirmed by this Court in ***Stevens v. State,*** 806 So.2d 1031 (Miss. 2001), *cert. denied*, 537 U.S. 1232, 123 S.Ct. 1384, 155 L.Ed.2d 195 (2003).  Stevens has now filed his application for post-conviction relief.

## FACTS

¶2.      The murders of Wesley Reid, Glenda Reid, Heath Pounds and Dylan Lee, as well as the aggravated assault of Erica Stevens, took place on Sunday, October 18, 1998, in Marion County. Erica is the daughter of Benny Joe Stevens, and she lived with her mother, Glenda Reid, with her stepfather, Wesley Reid, and her brother, Dylan, in a trailer home in Marion County located on Shiloh Firetower Road in Foxworth, Mississippi. Glenda and Stevens had divorced when Erica was three years old. Benny Joe Stevens subsequently married Lauren Stevens ("Lauren") in 1993 and thereafter gained custody of his daughters, Erica and Angela, in 1996. However, in August of 1998, Glenda regained custody of Erica. 806 So.2d at 1037. At trial, Lauren Stevens testified that her husband was expecting a workers' compensation settlement from a back injury claim and that he anticipated he would have to pay back child support from the settlement check. At the time of the murders, Stevens was unemployed and so was his wife.

¶3.      On Sunday, October 18, 1998, Stevens and his brother, Ricky Stevens ("Ricky"), had gone in Stevens's Ford pick-up truck to play pool. Thereafter, Lauren received a telephone call from Ricky on a cell phone that afternoon to the effect that Stevens had driven into a ditch and wrecked the truck. Stevens appeared drunk to Lauren when she arrived to assist them. Stevens's truck was pulled out of the ditch, and Stevens went back home. Later that evening Lauren entered Stevens's bedroom, she saw her husband with his gun belt laid out on the bed and putting shotgun shells in the gun belt. Lauren also remembered seeing his .357 handgun. Stevens then took his guns and left the home in his truck.

¶4.      On Sunday, October 18, 1998, Erica, Heath, Wesley, Glenda and Dylan were all at the trailer and had finished eating supper when Erica saw Stevens park his truck beside Wesley's truck in the backyard. No one was with Stevens. Erica saw Stevens get out of his truck. According to Erica, Wesley opened the sliding glass back door wide enough to stick his head out the door and called, "Benny Joe, Can I help you

2

?" Erica then heard a gunshot and Wesley scream, "[S]hit, he shot me." Erica tried to rescue her brother and his friend but Stevens shot her in the back. She then hid in the trailer's master bath and watched helplessly as her mother was shot by Stevens. She then heard Benny Joe say, "[B]itch, I told you that I'd kill you one of these days." *Id*. at 1038.

¶5.     Erica climbed through a small window in the bathroom where she had been hiding and heard more gunshots while she was running away from the trailer. Erica went to a neighbor's house for help and collapsed at the door. Erica told the neighbors that her father had shot her mother, stepfather, brother and friend. Stevens returned to his home where his wife inquired, "[W]hat did you do?", to which Stevens replied, "I just killed a family."*Id.* at 1039.

## ANALYSIS

### 1.     *Batson* **challenge to peremptory strike of prospective jurors.**

¶6.     Stevens asserts that the State improperly exercised peremptory strikes against two black veniremen and that the trial judge did not conduct the required analysis pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This issue was considered and rejected on direct appeal after this Court found that the trial judge properly determined that the reasons offered by the State were indeed race-neutral. 806 So.2d at 1045-48. The Court specifically held:

> The trial judge witnessed the challenges in court and could observe the demeanor of all involved as well as all other relevant circumstances in the case. We find that the trial court's findings are not clearly erroneous or against the overwhelming weight of the evidence. Therefore this contention is without merit.

*Id*. at 1048. Consequently, this issue is now barred from consideration under the doctrine of res judicata pursuant to Miss. Code Ann. § 99-39-21(3) (Supp. 2003). This procedural bar is applicable in capital cases. *Foster v. State*, 687 So.2d 1124, 1129 (Miss. 1996).

3

### 2. and 3.    Constitutionality of the death penalty statutes.

¶7.    Stevens asserts that the jury instructions given during the penalty phase of his trial were constitutionally defective in light of *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).  Stevens argues that Miss. Code Ann. § 99-19-101(7) improperly allows the commission of a felony to be used as an aggravating factor in determination of a death sentence, thereby lowering the level of culpability required to impose a death sentence.  However, even Stevens acknowledges that the death penalty may be imposed as punishment for a killing which takes place during the commission of a felony. *Stevens v. State*, 806 So.2d at 1053.  Stevens also argues that the capital sentencing scheme violates the Eighth Amendment because it potentially might allow one who merely participates in a felony to receive the death sentence for a killing he had no intent to commit.

¶8.    This Court has previously determined that a sentencing scheme which permits imposition of the death penalty for certain felony murders without a finding of a specific intent to kill is not violative of either the Eighth Amendment or due process protections. *Holland v. State*, 705 So.2d 307, 319-20 (Miss. 1997).  The Court has also held that the "during commission of a felony" aggravating factor is not unconstitutional because other statutes prevent the sentencing body from imposing a punishment that is greater than the crime. *Grayson v. State*, 806 So.2d 241, 252 (Miss. 2001).  These issues are without merit.

¶9.    Furthermore, these constitutional arguments were considered and rejected on direct appeal when this Court found that "the evidence unquestionably supports the finding that Stevens intended to kill his victims." 806 So.2d at 1053.  This Court held that the challenge to the constitutionality of Mississippi's statutory sentencing scheme was wholly without merit.  Consequently, these issues cannot be relitigated in a post-conviction collateral relief action pursuant to Miss. Code Ann. § 99-39-21(3).

### 4. Proportionality of Stevens's death sentence.

¶10.    Stevens makes a cursory assertion that his death sentence is disproportionate to the crimes because of his mental state and allegedly diminished culpability such that the sentences violates the Eighth Amendment. Stevens argues that it is, or should be, unconstitutional to impose the death penalty against someone convicted of felony murder.

¶11.    A variation on his previous Fourteenth and Eighth Amendment claims, this very same issue was raised by Stevens on direct appeal and dismissed without merit because this Court specifically found Stevens's death sentence to be neither excessive nor disproportionate. 806 So.2d at 1064. The issue is not only without merit, it also procedurally barred from consideration. Miss. Code Ann. § 99-39-21(3).

### 5. Evidence of diminished capacity.

¶12.    Stevens next claims that the trial court erred in excluding a defense psychiatrist's expert testimony that Stevens possessed a diminished mental capacity at the time of the crime. During the guilt phase, the trial judge ruled such expert testimony inadmissible since Stevens was not claiming insanity as a defense. The trial judge did however provide that such an expert opinion could be given at the sentencing phase. Stevens continues to argue that Dr. Sarah Deland should have been allowed to testify to his state of depression, his drug use and alcohol abuse because he was charged with a specific-intent crime.

¶13.    This same issue was raised on direct appeal where this Court affirmed the trial judge after finding that Stevens made no claim of insanity at trial.

> We hold that since Stevens does not allege that he lacked the ability to differentiate between right and wrong, the fact that he had been abusing alcohol, pain and anti-depressant medication should not have been presented to the jury to show that he lacked the ability to formulate specific intent on the guilt phase at trial. This issue is without merit.

806 So.2d at 1052. "[I]f a person, when sober, is capable of distinguishing between right and wrong and voluntarily intoxicates or drugs himself to the extent that he does not know or understand his actions, e.g., steals, robs, or murders, he is responsible and he may be convicted and sentenced for the crime." *Smith v. State*, 445 So.2d 227, 231 (Miss. 1984). Quite simply, diminished capacity is not a defense to a criminal charge in this State. *Cannaday v. State*, 455 So.2d 713, 720 (Miss. 1984). Not only is the issue without merit, it procedurally barred from consideration. Miss. Code Ann. § 99-39-21(3).

### 6. Limiting instructions on statutory aggravating circumstance.

¶14.    Stevens contends that the jury instruction issued in connection with the "especially heinous, atrocious and cruel" aggravating circumstance was both unconstitutionally vague and also unsupported by the evidence. Stevens acknowledges that this Court has consistently held that such instructions pass constitutional muster. *Puckett v. State*, 737 So.2d 322, 359-60 (Miss. 1999). Stevens also concedes that this matter was considered and rejected on direct appeal. The issue is therefore barred from consideration on collateral review. Miss. Code Ann. § 99-39-21(3).

¶15.    As for the sufficiency of the evidence, this Court ruled:

> We find that there is ample evidence presented to establish that the crimes committed by Stevens fit squarely within the limiting definition of heinous, atrocious and cruel provided in the jury instruction given by the trial court. Wesley was shot four times with two different guns. Wesley called out for help and asking God for help. Glenda pleaded for her children's safety before being shot in the head. Two young boys, Heath and Dylan, were both brutally murdered. Heath, age twelve, was shot twice, the first shot to the face with the second fatal shot to the chest severing his spine. Dylan was age eleven when he died. Erica, Stevens's daughter, was shot in the back, but she managed to escape the massacre. Erica testified that Stevens told her mother, Glenda, before he killed his ex-wife that "[B]itch, I told you I would kill you one of these days." Stevens confessed to his wife, Lauren, that he had "just killed a family."

806 So.2d at 1060. The issue is without merit.

### 7. The marital privilege.

6

¶16. Stevens argues that it was error for the trial court to allow Glenda Stevens to testify that he confessed to the slayings. This Court rejected this same contention on direct appeal after finding that M.R.E. 504(d)(1) contains an exception to the privilege where one spouse is charged with a crime against a minor child. 806 So.2d at 1050. The issue is both without merit and procedurally barred from further consideration. Miss. Code Ann. § 99-39-21(3).

## 8. Felony child abuse as an aggravating circumstance.

¶17. Stevens again argues, as he did on direct appeal, that a capital murder charge was not justified because there was no evidence of any separate act of child abuse apart from the actual killings. This Court relied on its prior holding in *Smith v. State*, 499 So.2d 750, 753-54 (Miss. 1986).

> We decline to adopt the merger doctrine and hold that under our felony-murder statute, the underlying felony does not merge into the murder. Our statutory provisions dealing with murder and the particular felony, in this case, burglary, are intended to protect different societal interests. When the appellant entered the home of [a person] with the intent to commit a crime therein, i.e., to kill [the victim], the burglary was complete and the subsequent killing of [the victim] elevated the crime of murder to that of capital murder. We find the appellant's argument unpersuasive.

806 So.2d at 1045 (quoting *Smith*). This Court found that both the burglary and the violence against the children elevated the killings by Stevens to capital murder. This issue is both without merit and procedurally barred. Miss. Code Ann. § 99-39-21(3).

## 9. Double jeopardy.

¶18. Stevens also asserts that the use of felony child abuse and burglary charges as underlying offenses for capital murder placed him in double jeopardy of prosecution. As previously discussed, the Court ruled on direct appeal that, because the underlying offenses did not merge into the murders, the use of those underlying felonies in the indictment did not place him in double jeopardy. This issue is without merit and procedurally barred.

7

### 10. Cumulative error.

¶19. Stevens argues that the cumulative effect of the aforementioned alleged errors denied him a fair trial. As discussed, the issues raised heretofore are without merit. Therefore, there can be no *cumulative* error. This issue is without merit.

### 11. Proportionality of the death sentence.

¶20. Stevens contends again that his death sentences are disproportionate to the crimes. This argument was specifically considered and rejected on direct appeal:

> After reviewing the record in this appeal as well as the death penalty cases listed in the appendix, we conclude that Stevens's death sentence was not imposed under the influence of passion, prejudice, or any other factor. We also find that the evidence is more than sufficient to support the jury's finding of statutory aggravating circumstances. Further, comparison to other factually similar cases where the death sentences was imposed, the sentence of death is neither excessive nor disproportionate in this case. Finally, we find that the jury did not consider any invalid aggravating circumstances. Therefore, this Court affirms the death sentence imposed in this case.

806 So.2d at 1064. The issue is without merit and is procedurally barred pursuant to Miss. Code Ann. § 99-39-21(3).

### 12. Aggravating factors not charged in the indictment.

¶21. Stevens argues that his death sentences must be vacated because the aggravating circumstances which charged capital murder were not included in the indictment. Stevens relies on the rulings of the United States Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), in which the Court held unconstitutional a sentencing scheme where a judge rather than a jury determined whether there were sufficient aggravating circumstances to warrant imposition of the death penalty.

¶22.    Apprendi fired several shots into the home of an African-American family in New Jersey and was indicted on state charges of shooting and possession of firearms.  He pled guilty to two counts of possession of a firearm for an unlawful purpose and one count of possession of an explosive.  After the judge accepted the guilty pleas, the prosecutor moved for an enhanced sentence on the basis that it was a hate crime.  Apprendi argued that he was entitled to have the finding on enhancement decided by a jury. The Supreme Court agreed, stating:  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490.

¶23.    However, the Court specifically stated that "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." *Apprendi*, 530 U.S. at 477 n.3.  The U.S. Supreme Court found in *Apprendi* that New Jersey's statutory scheme would allow a jury to convict a defendant of a second degree offense of possession of a prohibited weapon, and then, in a separate subsequent proceeding, allow a judge to impose a punishment usually reserved for first degree crimes made on the judge's finding based on a preponderance of the evidence.

¶24.    In 2002, the U.S. Supreme Court decided *Ring v. Arizona*.  *Ring* addressed the issue of whether the Arizona capital sentencing process of a jury deciding guilt and a judge making findings on aggravating factors as upheld in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), could survive *Apprendi*.  The Supreme Court decided it could not:

> [W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S., at 647-649, 110 S.Ct. 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi*, 530

9

U.S., at 494, n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.

* * *

> "The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. ... If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it." ***Duncan v. Louisiana***, 391 U.S. 145, 155-156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death. We hold that the Sixth Amendment applies to both.

***Ring***, 536 U.S. at 609.

¶25.    Stevens contends that because ***Ring*** found the ***Apprendi*** decision persuasive, the U.S. Supreme Court necessarily adopted every other rule stated in ***Apprendi*** for state capital sentencing proceedings, specifically the rule that the Constitution requires that aggravating factors be listed in indictments. The Court in ***Ring*** specifically noted what was being decided and what was not. "Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him." ***Ring***, 536 U.S. at 597 n.4. Ring did not contend that his indictment was constitutionally defective.

¶26.    Further, the retroactive application of ***Ring*** is in doubt. Although a divided en banc Ninth Circuit has ruled in ***Summerlin v. Stewart***, 341 F.3d 1082, 1121 (9th Cir. 2003), *cert. granted sub nom.* ***Schriro v. Summerlin***, 72 U.S.L.W. 3282 (U.S. Dec. 1, 2003) (No. 03-526), that ***Ring*** announced a substantive rule of law which may be applied retroactively to federal habeas corpus review proceedings, the Eleventh Circuit has held that ***Ring*** is not retroactive absent an express pronouncement to that effect.

*Turner v. Crosby,* 339 F.3d 1247, 1279-86 (11th Cir. 2003). Until instructed otherwise by the Supreme Court, we decline to apply *Ring* retroactively.

¶27.     The State is correct in its assertion that a defendant is not entitled to formal notice of the aggravating circumstances to be employed by the prosecution and that an indictment for capital murder puts a defendant on sufficient notice that the statutory aggravating factors will be used against him. *Smith v. State,* 729 So.2d 1191, 1224 (Miss. 1998) (relying on *Williams v. State,* 445 So.2d 798 (Miss. 1984)).

> We believe that the fact that our capital murder statute lists and defines to some degree the possible aggravating circumstances surely refutes the appellant's contention that he had inadequate notice. Anytime an individual is charged with murder, he is put on notice that the death penalty may result. And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment.

*Id*. at 804-05. This issue is without merit.

### CONCLUSION

¶28.     For these reasons, we deny all of Stevens's applications for leave to seek post-conviction relief.

¶29.     **APPLICATIONS FOR LEAVE TO SEEK POST-CONVICTION RELIEF, DENIED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**