# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-DR-01772-SCT

*XAVIER BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2002 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: LOUWLYNN VANZETTA WILLIAMS |
| | WILLIAM J. CLAYTON |
| | ROBERT M. RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE K. DOTSON THOMAS |
| | MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | CLAIBORNE McDONALD |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 11/09/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. Xavier Antonio Brown was convicted of capital murder of Felicia Newell and sentenced to death by lethal injection. This Court affirmed Brown's conviction and sentence and denied his motion for rehearing. ***Brown v. State***, 890 So.2d 901 (Miss. 2004), *cert. denied*, 544 U.S. 981, 125 S. Ct. 1842, 161 L. Ed. 2d 735 (2005). The Mississippi Office of

Capital Post Conviction Counsel was appointed on October 4, 2004, to provide post-conviction assistance for Brown. Brown now seeks leave to attack his conviction and the resulting sentence through a Petition for Post-Conviction Relief, arguing nine errors.

## FACTS AND PROCEDURAL HISTORY

¶2.     On February 26, 1998, Felicia Newell was found dead in her car, outside her apartment building in Hattiesburg, Mississippi. She had been shot with a nine-millimeter pistol. Two eyewitnesses, James Bigler and Susan Petrush , reported hearing a gunshot and seeing a black male, wearing gloves, walking away from Newell's vehicle. Bigler stated that the man had something concealed in his right hand and got into the passenger side of what appeared to be a Blue Cutlass. After the man entered the car, Bigler noticed another subject was in the driver's seat also wearing white gloves. The vehicle fled the scene of the crime. Petrush told the police that she called the apartment complex answering service and then the police.

¶3.     The prime suspect in Newell's murder was her ex-husband, Anthony Sims, who had a history of physically abusing Newell. Also, Newell was scheduled to testify against Sims in March 1998 on a concealed weapons charge. Prior to the murder, Sims left Newell a threatening voice-mail message, stating, "There's a contract out on you." Another individual's voice is captured on the message who whispered statements to Sims, who then repeated the messages to Newell.

¶4.     Two days later, the police found Sims dead of a prescription drug overdose in a Hattiesburg, Mississippi, motel. Sims death was ruled a suicide, leaving the police with no leads. The Newell murder case appeared to be closed.

¶5.  Months later, a man named Donald Crosby told a friend of Newell that a man named "Tony" Brown had killed her. Crosby told the police that a man named Xavier Brown had bragged to him about killing Newell. Crosby stated that Brown had been hired by Sims to murder Newell and that Sims had committed suicide to avoid paying his debt to Brown.

¶6.  Then, a man named Corey Johnson, who was engaged to Brown's sister, came forward on June 10, 1999, (over a year after the murder) and told the police that he had ridden with Brown from Laurel to Hattiesburg. Johnson told the police that he had seen Brown murder Newell with a nine-millimeter pistol. He also told the police that Brown had threatened his life if he told anyone what he saw.

¶7.  Based on the evidence compiled from Crosby and Johnson and two eyewitness neighbors of Newell, James Bigler and Susan Petrush, the State secured an indictment for Brown.

**ANALYSIS**

I.  **Was Brown denied his Sixth Amendment Right to the effective assistance of counsel at both the guilt and sentencing phases of the trial?**

¶8.  Brown contends he was denied his Sixth Amendment right to the effective assistance of counsel during the guilt and sentencing phases of the trial. Brown argues his counsel had a duty to investigate and present mitigating evidence and that counsel's failure to present a defense in the guilt-innocence phase of the trial as well as during the sentencing phase was deficient performance which prejudiced Brown.

¶9.  Brown alleges there was an abundance of relevant, significant and material mitigating evidence to have been obtained from Brown's family members, but defense counsel failed to

3

take the time to investigate or interview any of them. Brown contends his counsel's investigation and preparation for the guilt-innocence and sentencing phases of the trial fell short of the standards set forth in the American Bar Association (ABA) *Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Cases (*Revised Edition, February 2003).

¶10.    Brown argues that his counsel's deficiency resulted in the trial court never having the opportunity to consider evidence that Brown was a good student while he was enrolled in school, that he earned his GED, and that he entered the military and received an honorable discharge.    Brown contends his trial counsel's failure to investigate and interview family members, as well as other witnesses, did not constitute a sound trial strategy.

¶11.    Brown first asserts his counsel's performance fell below the objective standard of reasonableness.    Brown argues his defense counsel had a duty to investigate and present mitigating evidence during the trial, but counsel failed to fulfill this duty.    Brown claims he therefore suffered prejudice when counsel failed to conduct an adequate and sufficient investigation for purposes of mitigation and present mitigation evidence, resulting in Brown suffering from ineffective assistance of counsel that satisfies the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶12.    Second, Brown contends his trial counsel failed to present a defense during the guilt-innocence phase of the trial, and failed to subject the prosecution's case to a meaningful adversarial test.    Brown mentions that the defense did not call a single witness, nor was he called to testify. Brown argues that if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt.    "[I]f counsel

4

entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984).

¶13. In *Strickland*, the United States Supreme Court held the defendant must first show that counsel's performance was deficient, and the deficient performance prejudiced the defense. Brown acknowledges that this standard has been refined further in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. *See also Williams*, 529 U.S. 362.

¶14. However, Brown failed to raise this issue at trial or on direct appeal. Accordingly, review of this issue is governed by Miss. Code Ann. § 99-39-21, which states:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

(4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.

(5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.

(6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.

Miss. Code Ann. § 99-39-21.

¶15.    In order to overcome this procedural bar, Brown must show "cause" and "actual prejudice" as defined by Miss. Code Ann. § 99-39-21 (4) & (5). "Cause" refers to "cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal." "Actual prejudice" is "limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence."

¶16.    The legal foundation for Brown's claim of ineffective assistance of counsel is the lack of presentation of mitigating evidence by his counsel at trial, and his counsel's lack of investigating Brown's past character, and his counsel's failure to present a defense at trial. However, in the Response to Petition for Post Conviction Relief with Exhibits, the State includes excerpts of trial testimony which shows defense counsel made a record at trial that Brown instructed him not to call witnesses during the sentencing phase of trial. These are the

6

same witnesses that Brown now asserts would have informed the trial court of the evidence Brown offers to support his claim of ineffective assistance.

¶17.    The excerpt of trial record is as follows:

MR. THOMAS E. SCHWARTZ: . . . Following the verdict of the jury last night, I've had an occasion to confer with Scott and my client, my client's grandmother, Ms. Herrington [sic], my client's ex-wife concerning their possible testimony in mitigation in the mitigation phase of the sentencing hearing.

I have likewise counseled and advised Xavier Brown with regard to his right to testify at the sentencing phase as well as his right to merely rise before the jury and ask that they spare his life, under my appreciation of the rules and current law, without subjecting him to further cross-examination.

Mr. Brown has instructed me and directed me as his attorney–

THE COURT: Mr. Brown, you need to listen to what your attorney is saying because I'm going to ask you some questions about this.

. . . .

[SCHWARTZ]: My client's instructions to me as his attorney is that he wishes to not call, has directed me to not call his grandmother, his ex-wife. And he further advises me that he elects to not make any statement of any type or kind to the jury.

As an officer of the court, Your Honor, I wanted to make this record, and it is my opinion that Xavier is competent mentally, he is competent intellectually. I truly believe he understands what I've explained to him and that these are his decisions. And I've explained to him the consequences of them.

So I felt it incumbent on me to address the Court with this situation since we're at the most serious portion of the proceeding.

. . . .

[SCHWARTZ]: Just one other thing. And I think that Xavier will acknowledge that both Scott and I, it would have been our advice and opinion that he do make those statements and have those witnesses testify in mitigation. We do have one

7

witness in mitigation that we intend to call, Your Honor, as I've made known to the Court. Nonfamily member. Thank You.

. . . .

THE COURT: Mr. Brown, would you stand up please. . . . Mr. Brown, the Court has observed you and, in fact, talked with you through these four days and have observed that you're obviously a competent, intelligent man. And you have interacted with your attorneys. You know, I've seen that. You have talked with them. There have been questions that have been posed to you regarding different decisions. And I think your attorneys have kept you advised.

There have been times when we took breaks to allow the attorneys to consult with you about different things that were critical stages in the trial. And you have obviously participated and have on the record participated. You certainly have a right to have an attorney, or two attorneys, and you've had very competent attorneys, and they've worked hard for you.

You have a right to participate or even to conduct your own defense, and I am just very grateful that you have allowed your attorneys to conduct it because they've done a good job. If you choose to disregard your attorneys' advice, that is your choice. You've heard your attorneys state that they recommend that you do these things. But the ultimate decision apparently is going to be your, and I think in this case it should be.

You may be, by your decisions, increasing the likelihood of an unfavorable outcome, and I just want you to understand that. Do you understand what I've been saying?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions you want to ask me, Mr. Brown?

THE DEFENDANT: No, sir.

THE COURT: All right. I'm not going to ask you for a final decision now. I'm going to proceed with the State's case and then let you again consider and give you time to talk with your attorneys concerning the ramifications of what's going on, and we'll proceed.

THE DEFENDANT: Thank you, Your Honor.

8

[SCHWARTZ]: Judge, one other thing, and while Xavier is on his feet, the remarks that I've made to the Court this morning, that we, in fact, discussed those things this morning.

THE DEFENDANT: Yes, sir.

¶18. Brown first argues his counsel entirely failed to investigate and present mitigating evidence at trial, however a review of this excerpt shows otherwise. The record shows Brown's trial counsel intended to call Brown's grandmother and ex-wife as witnesses during the sentencing phase of trial in order to present mitigating evidence, but was instructed not to do so by Brown. The State argues that Brown's defense counsel cannot be held at fault for the lack of presentation of any mitigation evidence during sentencing because they followed Brown's instructions. Brown refused to change his mind on this issue even after being informed by his counsel and the judge that this decision could be detrimental to his case. The trial record states as follows:

[SCHWARTZ]: It is final decision time. He's not changing his mind, but I want to put on the record that I've given him another opportunity to reconsider.

THE COURT: All right. I'll let you ask it first, Mr. Schwartz.

. . . .

[SCHWARTZ]: . . . Xavier, I explained to you that this is basically the last opportunity we will have. I've explained to you your rights. Your grandmother and ex-wife are here and available. Is it still your decision –

THE DEFENDANT: Yes, sir.

[SCHWARTZ]: - to not call them as witnesses as well as your decision to not testify?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Brown, you have any questions you want to ask this Court?

THE DEFENDANT: No, sir.

THE COURT: You understand this is your call.

THE DEFENDANT: Yes, sir

THE COURT: Your lawyer's making his recommendation and you're going against your lawyer's recommendations.

THE DEFENDANT: Yes, sir.

¶19. The previous excerpts not only show that Brown's first assignment of error to his counsel of not investigating and presenting mitigating evidence is incorrect, but it ultimately establishes the lack of cause in Brown's claim of ineffective assistance.

¶20. The State argues Brown's claim that he was a good student while enrolled in school, that he earned his GED, and that he entered the military and received an honorable discharge is not newly discovered evidence, as required by this Court's ruling in *Crawford v. State*, 867 So. 2d 196 (Miss. 2003), and that such evidence is negative and weak and would not have mitigated against the aggravating factors and clear evidence of Brown's guilt.

¶21. We find that the legal foundation for Brown's claim of ineffective assistance is not newly discovered evidence which could not have been discovered with reasonable diligence at the time of Brown's trial or direct appeal. Brown includes affidavits from his grandmother, ex-wife and Darwin Brown, but each of these individuals were available at the time of trial and direct appeal. Since Brown did not submit to this Court any newly discovered evidence or evidence that could not have been discovered with reasonable diligence at the time of trial or direct appeal, Brown's claim of ineffective assistance is without "cause."

10

¶22.    Miss. Code Ann. § 99-39-21(2), also allows this Court to grant a petitioner relief from the waiver if "actual prejudice" is also shown.    "Actual prejudice" is "limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence."    Miss. Code Ann. § 99-39-21(6) states: "The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section."

¶23.    Brown has identified a lack of investigation and presentation of mitigating evidence, and counsel's failure to present a defense in the guilt-innocence phase of the trial as errors that would have actually adversely affected the ultimate outcome of his conviction and sentence. Therefore, in order to show error by his trial counsel.    Brown bears   the burden of identifying evidence which would have been discovered as a result of an investigation by defense counsel that could establish a reasonable probability that the outcome of his trial would have been different.    In ***Woodward v. State***, 843 So.2d 1 (Miss. 2003), this Court held, that "[a] defendant who alleges that trial counsel's failure to investigate constituted ineffectiveness must also state with particularity what the investigation would have revealed and specify how it would have altered the outcome of trial . . . or 'how such additional investigation would have significantly aided his cause at trial.'" ***Id.*** at 18.

¶24.    Consequently, Brown has the burden of showing how his claims concerning that he was a good student while enrolled in school, that he obtained a GED, and that he entered the military and received an honorable discharge would stand as mitigating evidence to outweigh the aggravating evidence used to convict him at trial.    Brown simply states that this evidence

11

could have been discovered if his counsel investigated his past and interviewed his family and presented such evidence during the guilt-innocence phase of trial.

¶25. This Court held on direct appeal that evidence presented during trial was sufficient to support Brown's conviction. Brown has not stated with specificity how a school record ending in 1981, which shows grades ranging from S's and A's to D's and F's, from first to ninth grade, could have altered the outcome of his trial. Brown has not produced evidence showing he obtained a GED. Brown has not shown how a military record that not only shows he was honorably discharged, but first reduced in rank and pay and then discharged, would have altered the outcome of his trial. Brown has not shown his defense counsel erred in not presenting such evidence during the guilt innocence phase of the trial, nor has he demonstrated how such evidence would have actually adversely affected the ultimate outcome of his conviction or sentence. Therefore, Brown's claim of ineffective assistance is without "actual prejudice."

¶26. Furthermore, the trial record shows that Brown was well-informed by his counsel during his trial and Brown participated in his trial. Brown had a clear opportunity to object to what he now contends is a lack of investigation and presentation of mitigating evidence during the trial. Brown could have made this assertion when the trial judge asked Brown if he had any questions. The trial judge made sure to ask Brown this question after Brown made the decision himself to not testify nor allow his family members to testify on his behalf. Brown made no objections at this point, nor during his direct appeal to this Court. Brown has not identified newly discovered evidence, but uses evidence he readily admits was available during trial and direct appeal to support his claim of ineffective assistance. Overall, Brown has not identified errors which would have adversely affected his conviction or sentence. Brown claims his

12

counsel did not investigate or interview any witnesses, nor was his counsel's assistance effective, but the trial record shows otherwise. Therefore Brown has not shown cause or actual prejudice and is procedurally barred from asserting this claim.

¶27.   In reference to the guilt-innocence phase of trial, the trial court judge stated to Brown, after his counsel made an on-the-record statement regarding Brown's decision not to testify during sentencing nor allow other family members to testify, "[Y]ou've had very competent attorneys, and they've worked hard for you. You have a right to participate or even to conduct your own defense, and I am just very grateful that you have allowed your attorneys to conduct it because they've done a good job."

¶28.   The trial judge made a clear statement that Brown's defense counsel had provided him with adequate representation during the guilt-innocent phase of the trial. This Court reiterated in *Underwood v. State*, 919 So.2d 931 (Miss. 2005), that "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 937.

¶29.   Given a review of the evidence submitted by Brown, we conclude that Brown's counsel exercised sound trial strategy during the guilt-innocence phase of trial. In *Cronic,* 466 U.S. at 657, 104 S.Ct. at 2046, the United States Supreme Court held that "the Sixth Amendment does not require that counsel do what is impossible or unethical . . . . If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *Id*. at n.19.

¶30. In reviewing a claim of ineffective assistance of counsel, "[t]he focus of the inquiry is on whether counsel's assistance was reasonable considering all the circumstances." *Manning v. State*, 929 So.2d 885, 901 (Miss. 2006). Based upon the facts of this case and the information presented in the trial record, defense counsel's assistance was reasonable considering all of the circumstances. Therefore, Brown's arguments are without merit.

## II. Are Brown's post-conviction claims barred by res judicata or prohibited by the imposition of procedural bars?

¶31. Brown argues that his post-conviction claims are not barred by res judicata or prohibited by the imposition of procedural bars. Brown asserts that his claims are not only meritorious, but are of such a nature and substance that the application of procedural bar and res judicata would be erroneous. Brown further claims that *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct.2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Schiro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); and *Jackson v. State*, 732 So.2d 187 (Miss. 1999), represent the current state of fundamental constitutional law in the capital litigation arena. Based upon the alleged "new" legal standards set forth in these cases, Brown believes that he is entitled to have his claims considered.

¶32. Under issue two, Brown once again makes the argument that he has a right to effective assistance of counsel on post conviction review and that, pursuant to ABA guidelines, he is

required to challenge overly restrictive procedural rules in order to meet the ***Strickland*** requirements imposed upon him. According to Brown, the imposition of a procedural bar or the application of the res judicata doctrine to meritorious post-conviction issues is tantamount to an unfair application of his fundamental rights as has been provided to him under the ***Jackson*** holding. Brown also states that the extensive investigation required for such appeals cannot be effectively accomplished by appellate counsel because of the limited time counsel has to perfect an appeal.

¶33. As stated previously, Brown has not submitted any newly discovered evidence in support of his claims. It is clear that a petitioner seeking post conviction relief "must prove that new evidence has been discovered since the close of trial and that it could not have been discovered through due diligence before the trial began." ***Crawford v. State***, 867 So.2d 196, 203-04 (Miss. 2003). Furthermore, Brown fails to show how the cases he has cited allow him to disregard the procedural bars or guarantees him the right to effective post conviction relief counsel. Therefore, Brown's claims under issue two also fail.

**III.    Was Brown denied adequate notice of the specific offenses of which he was to defend, in violation of the United States and Mississippi Constitutions?**

¶34. Brown argues that ***Ring*** and ***Apprendi*** dictate that aggravators must be considered as elements of the crime and this requires that they be included in the charging indictment and found by the jury beyond a reasonable doubt. On direct appeal, we rejected this argument and stated as follows:

> Brown urges that the prosecution must include in the indictment any aggravating factors which it intends to prove at the sentencing phase of the trial, and that

15

because his indictment did not include a statutory aggravating factor or a mens rea element it is constitutionally infirm.

This is not our law. The major purpose of any indictment is to furnish the accused a reasonable description of the charges so an adequate defense might be prepared. *See Williams v. State,* 445 So.2d 798, 804 (Miss. 1984). Accordingly, all that is required in the indictment is a clear and concise statement of the elements of the crime charged. *Id.* at 804. Our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment. *Williams,* 445 So.2d at 805. Thus, *every time* an individual is charged with capital murder they are put on notice that the death penalty may result. *See Stevens v. State,* 867 So.2d 219, 227 (Miss. 2003). This is the law of our state.

Brown urges that the United States Supreme Court cases of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct.2428, 153 L.Ed.2d 556 (2002), bolster his position. They do not. We have previously discussed these cases at length and concluded that they address issues wholly distinct from our law, and do not address indictments at all. *See Stevens,* 867 So.2d at 225-27. This issue is without merit.

*Brown,* 890 So.2d at 917-18.

¶35. Therefore, since we have previously considered and rejected this issue, it is now procedurally barred by res judicata. Consequently, Brown's argument under issue three is without merit.

> **IV.** **Was Brown denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution where Brown has been subjected to the "Death-Row Phenomenon?"**

¶36. Brown asserts that his Eighth Amendment rights have been violated due to the "death row phenomenon," an allegedly cruel and unusual condition caused by the extended delay in carrying out his execution. Brown argues that his execution after five years on death row "serves no penological end and thus is violative of the Eighth Amendment."

16

¶37. While we recognize that the claim would have been premature if raised earlier, it is, in fact, not a cognizable claim at all. Therefore, it does not matter when the claim is raised. It is not a cognizable claim. This Court has flatly rejected claims of defendants suffering from the death row phenomenon. In *Wilcher v. State*, 863 So.2d 776 (Miss. 2003), the defendant claimed that he had been a victim of cruel and unusual punishment as a result of being confined to death row and subjected to numerous delays and execution dates during the two decades he had spent imprisoned. This Court noted there was "no law of the U.S. or of this state to support Wilcher's claim," and therefore, there could be no grounds for relief. *Id*. at 834. For these reasons, Brown's claim is without merit.

> **V.     Was the sentence rendered against Brown disproportionate and in violation of the Eighth and Fourteenth Amendments to the United States Constitution and corresponding portions of the Mississippi Constitution?**

¶38. Brown argues that his death sentence is excessive in relation to the crime for which it was imposed. Brown asserts that, considering his intent to commit the crime - his "relative mental state and culpability" - his sentence was disproportionate. We considered and rejected this claim on Brown's direct appeal. Specifically, we held that:

> After the death penalty has been imposed by a jury and submitted to us on appeal, we review its validity under four guidelines established by the Legislature. We must determine:

> Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor . . . Whether the evidence supports the jury's . . . finding of a statutory aggravating circumstance . . . [and] Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and . . . Should one or more of the aggravating circumstances be found invalid on appeal, [we] shall determine whether the remaining aggravating circumstances are outweighed by

17

the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.

Miss. Code Ann. Section 99-19-105 (Rev. 2000).

We have carefully weighed and examined these guidelines in the pages above, and after reviewing the entire record in this appeal as well as the death penalty cases listed in the appendix, we conclude that the sentence of death imposed upon Xavier Brown was not imposed under the influence of passion, prejudice, or any other factor. We also find that the evidence is more than sufficient to support the jury's finding of statutory aggravating circumstances. Additionally, the sentence is not excessive or disproportionate to factually similar cases. Lastly, the mitigating circumstances did not outweigh the aggravating circumstances of the crime, and the jury did not consider any invalid aggravating circumstances. We affirm the sentence of death for Xavier Brown.

*Brown*, 890 So.2d at 922. Our previous ruling on Brown's sentence procedurally bars reconsideration of this issue.

### VI. Is Brown's claim regarding actual innocence to all charges levied against him procedurally barred and without merit?

¶39. Brown claims that he is innocent of all charges and that this Court is obligated to extend an actual innocence exception to his procedural default of the claims set forth in his post-conviction relief brief. In support of his claim of actual innocence, Brown asserts that he did not match the given description of the murderer. The State asserts that Brown failed to raise this issue at trial or on direct appeal. The record in this matter indicates that Brown's counsel did touch on this issue during cross examination of witnesses at trial. However, Brown failed to raise actual innocence based on the claim that he did not match the description of the murderer on direct appeal. Any such argument is now procedurally barred.[1] Notwithstanding

---

[1]The outcome would be the same even if Brown's claim was construed as an argument that his conviction or sentence was against the weight or sufficiency of the evidence. While Brown did raise a claim regarding the sufficiency and weight of the evidence on direct appeal, the basis for that claim was different than what he is claiming now.

18

the procedural bar, there is nothing in Brown's petition which presents any newly discovered evidence on this issue. Consequently, we find this issue to be without merit.

### VII. Did the alleged use of perjured testimony deny Brown a fundamentally fair trial?

¶40. Brown asserts that the State's primary witnesses, Donald Crosby and Corey Johnson, gave perjured testimony during his trial. Brown argues that Crosby lied about his business relationship with Darwin Brown; Crosby lied when testifying that Darwin Brown was present when Brown confessed to killing Newell; and Crosby lied when stating that Darwin Brown told him that Brown wanted to be known as a killer. Brown claims that this alleged false testimony necessitates a new trial. However, there is nothing in the record to show that Brown raised this issue at trial or on direct appeal. According to Miss. Code Ann. Section 99-39-21(1), Brown's failure to adequately raise this issue at trial or on direct appeal bars him from raising the issue in his petition for post-conviction relief. Therefore, issue seven is without merit.

### VIII. Did the prosecution's failure to preserve all evidence deny Brown due process of law?

¶41. Brown claims that because the State did not introduce it at trial, the State failed to "preserve" the nine millimeter pistol allegedly used to kill Newell. Brown argues that while Mississippi Crime Lab results concerning a nine millimeter handgun were introduced at trial, it is unclear as to where this tested weapon originated. Brown also alleges that the chain of custody forms do not show the State ever possessing, or currently possessing, such a weapon. As with several of his other arguments, Brown failed to raise this issue at trial or on direct appeal. Accordingly, this issue is barred by Miss. Code Ann. Section 99-39-21(1).

19

¶42. Also, without waiving any applicable procedural bar, this claim is substantively without merit. The gun at issue was tested by the Mississippi Crime Lab on July 30, 1999. Crime Lab Records, submitted by Brown, show that this gun, labeled "Exhibit 10," is described as a "9 mm Lorcin, Model L, Serial number L069071." This gun was taken from Brown upon his June, 1999, arrest. Furthermore, the chain of custody forms do show that what was tested by the Crime Lab was taken directly from Brown. Subsequently, the record shows that the State did in fact preserve the weapon. Therefore, this claim is without merit.

### IX. Was Brown denied his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the federal constitution and Mississippi Law due to the cumulative effect of the errors at his capital trial?

¶43. Brown claims the aggregate effect of the variety of allegedly prejudicial errors in his case require reversal. Brown argues that the Court must review the aggregate of errors committed during the course of his trial and sentencing, and afford him relief. Despite the argument made by Brown, all of his post-conviction claims are procedurally barred either through waiver or res judicata. Moreover, Brown is even barred from alleging cumulative error of these barred claims by Miss. Code Ann. Section 99-39-21(1). Without waiving any applicable procedural bar, Brown has simply failed to show that any error was committed during the course of his trial or during the sentencing phase. Therefore, Brown's assertion as to issue nine is without merit.

### CONCLUSION

¶44. For the foregoing reasons, we deny Brown's application for leave to seek post-conviction relief.

¶45.	**LEAVE TO SEEK POST-CONVICTION RELIEF DENIED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.**