# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DP-01548-SCT

*XAVIER BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/20/2002 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: ANDRE DE GRUY |
| | SCOTT JOSEPH SCHWARTZ |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE KATHRYN DOTSON |
| | MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | CLAIBORNE McDONALD |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED – 09/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. On February 26, 1998, Felicia Newell was found dead in her car. She had been shot with a nine-millimeter pistol in the parking lot of her apartment building in Hattiesburg. The police had a prime suspect: Felicia's ex-husband Anthony Sims, who had history of threatening violence against her. Felicia was set to testify against him in an upcoming hearing.

¶2. The police found Sims two days later, dead of a prescription drug overdose in a hotel room. The death was ruled a suicide, leaving the police with no leads. The case appeared to be closed.

¶3. Months later a man named Donald Crosby told a friend of Felicia's that she had not been killed by her ex-husband, but by a man named Xavier Brown. Crosby said that Brown had been paid by Sims to murder Felicia and that Sims had committed suicide to avoid the debt he had incurred.

¶4. Then a man named Corey Johnson came forward to the police on June 10, 1999—over a year after the murder. He was engaged to Brown's sister, and told the police that he had ridden with Brown from Laurel, where they lived, to Hattiesburg. He told them he saw Brown murder Felicia with a nine millimeter pistol, and that Brown had threatened his life if he told anyone what he saw.

¶5. Based on the evidence compiled from those two witnesses and a neighbor of Felicia's named James Bigler, who was an eyewitness to the crime, the State secured an indictment of Brown for capital murder and for accepting money to commit the crime—murder-for-hire. His trial began June 18, 2002, in Lamar County, and ended two days later with a verdict of guilty. Brown was sentenced to death by lethal injection for his crimes. He appeals that conviction and the resulting sentence to this Court, arguing fifteen errors in the trial below.

## DISCUSSION

¶6. We review with heightened scrutiny any sentence of death and any conviction upon an indictment for capital murder. *See* *Flowers v. State*, 842 So.2d 531, 539 (Miss. 2003). While we may apply different standards for different questions—for example, a review of the admission of evidence—we always apply a heightened scrutiny. Under this method of review, all doubts are to be resolved in favor of the accused because what may be harmless error in a case with less at stake becomes reversible error when the penalty is death. *Id*.

2

## 1.     Were there too many members of the jury pool with ties to law enforcement or victims of crime to afford Brown a fair trial?

¶7.     Brown urges that his right to a fair trial and impartial jury was violated because there were too many jurors with ties to law enforcement. In support he cites *Mhoon v. State*, 464 So.2d 77, 80 (Miss. 1985), where we dealt with "a novel issue which . . . would [normally] have little merit." In *Mhoon*, "[o]f the 39 venirepersons considered by the court and not excused for cause, 12 of them were either police officers or related by blood or marriage to current or former police officers." *Id.* at 80. The empaneled jury included a uniformed policeman as the foreperson and five other jurors who were closely related to law enforcement. *Id.* One of those jurors improperly withheld her connections to law enforcement. *Id.*

¶8.     We found that the "statistical probability of this situation seems somewhat remote," and found in this unique case that "the sheer number of law enforcement-connected persons in the jury pool, as well as persons selected as jurors, has worked a great hardship on Mhoon." *Id.* at 80-81. We refused to say "that a person engaged in law enforcement, or related by blood or marriage to one engaged in law enforcement, should be per se excluded from jury service," but instead cautioned that "in a unique factual situation such as this unusual case, the opportunity for undue influence over the opinions of other jurors was too great a risk." *Id.* at 82.

¶9.     It is noteworthy that in *Mhoon* defense counsel attempted to "have the law enforcement-connected persons excused for cause." *Id.* at 80. That simply did not happen in the case sub judice. Both the prosecution and the defense were allowed twelve peremptory strikes for the general jury pool and two for the alternate pool. Of the twelve strikes the defense was allowed, only seven were used for jurors who had law enforcement experience or were somehow related or connected to persons in law enforcement. Of the two strikes allowed for alternate jurors, none were used to strike jurors with connections to law

3

enforcement. Indeed, juror #6, one of eight struck by the prosecution, had a brother-in-law in law enforcement.

¶10. Moreover, *Mhoon* involved six persons on the jury with in law enforcement or with strong connections to law enforcement; in the case at hand, there were only five people on the jury with ties to law enforcement.[1] Another difference in *Mhoon* is that the defense exhausted itself trying to rid that "unusual case" of the statistically improbable number of persons in law enforcement or connected to it. That simply did not occur here. The concern of undue influence on the jury in *Mhoon* is unique, and we refuse to assume that simply because a person is in law enforcement or connected to those who are that they cannot apply the law fairly and honestly as described in their oath.

¶11. The State argued that Brown was procedurally barred from raising this issue because it was not objected to during voir dire. Brown counters that *Mhoon* allows a judge to sua sponte ameliorate problems with a jury pool, such as affording counsel additional peremptory challenges or increasing the size of the venire, and so this does not leave a burden on counsel to object. *Id.* at 81. Brown's argument is incorrect. While *Mhoon* does allow our trial judges to remedy unique situations of their own accord, this does not mean the attorneys do not have to object.

¶12. After finalizing the jury in the case at hand, the judge asked the attorneys a question: "Are we all together on the 12?" The defense answered immediately in the affirmative. In *Mhoon* defense counsel tried repeatedly to remedy the situation and was not satisfied with the composition of the jury. *Id.* at 80.

---

[1] On appeal, Brown urged that juror #40 was connected to law enforcement because he had a first cousin who was an "agent" in Lamar County, a word culled from his reply to the trial court during voir dire. The State contends this means he is a civil servant in the Department of Agriculture. On juror #40's jury questionnaire he stated that his first cousin is a state trooper.

To preserve a challenge under *Mhoon*, as rare as it may be, one must contemporaneously object or risk waiver under the procedural bar. *See Foster v. State*, 639 So.2d 1263, 1270 (Miss. 1994).

¶13.    Brown also urges that the presence of a juror whose friend's daughter was murdered was prejudicial to his fair trial. This juror, like all the jurors who served at Brown's trial, was asked if they could apply the law fairly and impartially, with no regard to past circumstances or events. All responded in the affirmative. In *Shell v. State*, we declined to establish a per se rule of disqualification where a juror is related to a victim of a similar crime. 554 So.2d 887, 892 (Miss. 1989), *reversed in part on other grounds by Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990); *see also United States v. Jones,* 608 F.2d 1004, 1007 (4th Cir. 1979).

¶14.    We continue to reject that reasoning. Regardless, in the case in hand the victim of the crime was not a relative of juror #21, but the daughter of a friend. This issue is without merit.

## 2.    Was a juror that was removed for cause qualified to serve?

¶15.    Brown alleges that juror #32 was excluded because of his neutral views on the death penalty. The trial judge excused #32 as "not qualified" for other reasons, but the juror's constant equivocation on the death penalty would have been sufficient.

¶16.    When asked by the trial judge during voir dire his feelings on the death penalty, the juror agreed with the judge's characterization that he was "undecided." When the court asked him if his views on the death penalty would prevent or substantially impair his ability to follow the law in deciding the sentence, the juror responded that he would "do [his] best to follow the law." Yet when asked by the State if he could follow the law and vote for the death penalty if it was warranted, he responded "I don't think that I would be able to vote for the death penalty." When the question was rephrased, he stated that "because of my temperament, I don't think that I could vote for the death penalty." When examined earlier in the voir dire

5

by the State the juror said "I don't know if I can . . . make a decision that would terminate somebody's life."

¶17.    Juror #32 had initially sought to be excused from jury service because his wife worked and he had a fifteen-year-old daughter at home. When asked later if he could be fair in judging the testimony of police officers, the juror said that he "respect[ed] law officers because of the nature of their job," and "because of their training and the nature of what they do, I think that they . . . [are] more credible than some people would be."

¶18.    Along with two other jurors, the trial judge struck juror #32 for cause, without motion from the State or the defense, because "it's obvious [he'd] say anything to get off the jury . . . and I don't think [he's] death-qualified anyway." There was no objection from either side. The judge then went on to say that he was struck for cause "because the answer to the [voir dire] questions are just flat not qualified . . . [a]nd this has nothing to do with death qualification." There was no objection from either counsel.

¶19.    Because there was no contemporaneous objection, this issue is procedurally barred. *Foster*, 639 So.2d at 1270. Notwithstanding that bar, the juror was properly struck.[2] If jurors provide inconsistent answers regarding their feelings on the stated law of this state, they may be struck for cause. In *Walker v. State*, 671 So.2d 581, 629 (Miss. 1995), we allowed a juror to be "struck for cause because she repeatedly answered counsel's question with the response that she would return a life sentence or at least 'hope to,'" despite the presence of the death penalty. Such a strike is allowed because there is a compelling state interest in jurors upholding the laws of the state of Mississippi.

---

[2] Our scope of review permits us to address issues on their merits without waiving the procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 n.10, 109 S.Ct. 1038, 1044 n.10, 103 L.Ed.2d 308 (1989).

¶20. A juror's position on the death penalty must be unmistakably clear, or a trial judge may properly remove them for cause. *See Stevens v. State*, 806 So.2d 1031, 1062 (Miss. 2001); *Foster v. State*, 639 So.2d 1263, 1278 (Miss. 1994); *Pinkney v. State*, 538 So.2d 329, 344 (Miss. 1988), *vacated on other grounds by Pinkney v. Mississippi*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990). Deference must be paid to the trial judges who sees and hear the juror for they are in the best position to determine the credibility of the juror. *Id.* at 1062 (citing *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985)).

¶21. The trial judge's conclusion was that the juror, who wished to be excused, was not qualified to sit on the jury, and we will not substitute our judgment for his when he observed the demeanor of the juror. This issue has no merit.

### 3. Did the trial court err by not granting a cautionary instruction regarding one witness' testimony?

¶22. Brown urges that the trial court committed reversible error by not granting a cautionary instruction that Corey Johnson was an accomplice to the murder. Brown asked for two instructions to be given regarding this allegation. Instruction D-16 read:

> The Court instructs the jury that the uncorroborated testimony of an accomplice should be viewed with great caution and suspicion and that it must be reasonable and not improbable or self-contradictory or substantially impeached.

Instruction D-17 read:

> A person criminally involved with others in a crime is an accomplice. The testimony of an accomplice is to be considered and weighed with great care and caution and suspicion. You may give it such weight and credit as you deem it is entitled.

The court refused both instructions. The granting of a cautionary instruction regarding the testimony of an accomplice witness is discretionary with the trial court. *Burke v. State*, 576 So.2d 1239, 1242 (Miss.

7

1991). There is a two-part test to determine whether a trial judge abused his discretion in these situations. *Id.* at 1242. First, it must be determined if the witness was in fact an accomplice. *Id.* If that prong is met, we determine secondly if the testimony was without corroboration. *Id.*

¶23. "An accomplice . . . is a person who is implicated in the commission of the crime," and will be considered as such "if the evidence admits a reasonable inference that the witness may have been a co-perpetrator or the sole perpetrator." *Id.* Johnson was never charged with a crime by the police and never prosecuted, but Brown urges that Johnson might still be considered an accomplice through a reading of *Williams v. State*, 729 So.2d 1181, 1189 (Miss. 1998), where we said that "[i]t is not necessary for an accomplice to be prosecuted, and [a witness] may be considered to be an accomplice even though she was not prosecuted for her participation or later attempts to obstruct the investigation."

¶24. Yet in *Williams* we found that witness "was *much more* than a passive observer." *Id.* (emphasis added). Here, the record establishes that Johnson was only a passive observer. He testified that Brown asked him to go for a ride with him, that they drove to Hattiesburg, and that he realized Brown had shot someone. He testified that Brown had a nine-millimeter pistol, the same type of weapon that was used to murder Felicia Newell. Johnson also testified that Brown pulled the gun on him and ordered him to drive away from the scene of the crime.[3] His testimony detailed that he did not know that Brown had the gun or even what car they rode in to Hattiesburg.

¶25. When the defense offered the proposed instructions, the trial court noted that "[t]here is no proof at all that he was an accomplice." The judge went on to say "I don't think by any stretch of the imagination

---

[3] The prosecution characterized this as an "assault" on Johnson.

he could deemed to be an accomplice . . . [t]he instructions need to conform to the proof, and that's just not there."

¶26.　Indeed, the examination of Johnson by counsel for Brown did not attempt to draw Johnson into the crime as an accomplice, or discredit him through those means, but instead attempted to focus on the accuracy and veracity of his claims. The statement Johnson gave the police differed from the testimony he gave at trial. For example, Johnson told the police that Brown drove from the apartment building parking lot and then stopped at a K-Mart, where he was forced to drive. On the stand, Johnson admitted that he actually drove from the parking lot of the apartment building where the crime occurred. Johnson attributed the different scenarios to the fact he "was scared" when he spoke with the police. The defense repeatedly focused on this inconsistency, telling Brown in open court that "your testimony is obviously different than it was when you told it to the police."

¶27.　The defense also wanted to discredit Johnson's testimony by attempting to reveal domestic problems in his relationship with Brown's sister. While this path was not chosen, the defense hoped that it would show that "an alleged subsequent domestic confrontation that occurred between [Johnson] and [Brown's] sister . . . [was a] possible motivation for certain testimony." This scrutiny of the record simply shows one thing: no one, not even the defense, considered Johnson an accomplice to the crime.

¶28.　Moreover, even if Johnson were an accomplice, we would only reverse if his testimony was without corroboration. Johnson's testimony was corroborated in part by two other witnesses, notably Donald Crosby and James Bigler. The trial court is granted discretion over what instructions are presented to the jury. That discretion was not abused, and so the assignment of error is without merit.

**4.　Did the trial court commit error by allowing the jury to hear testimony that Brown threatened a witness and by not issuing a limiting instruction regarding the testimony?**

9

¶29. Johnson testified that Brown had threatened him with a gun at the scene of the crime and that Brown told him that if he "said anything about anything that happened down there in Hattiesburg, that he was going to kill me." Brown objected to the admission of the testimony and the trial court overruled his objection after utilizing a M.R.E. 404(b) balancing test; the court then concluded that the threat was part of the same crime. The State further wished to admit evidence of an alleged threat the came one month after the crime, but the judge refused its admission as "a second crime" under 404(b). Brown now urges that he was prejudiced by the testimony that he threatened Johnson and that the trial judge erred by admitting it.

¶30. The trial court employed a Rule 404(b) balancing test under the Mississippi Rules of Evidence. That section of the rule mandates that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity," but "may . . . be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Miss. R. Evid. 404(b).

¶31. We have held that "wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to MRE 403 balancing analysis and a limiting instruction." *Smith v. State*, 656 So.2d 95, 100 (Miss. 1995). The limiting instruction is supposed to issue sua sponte from the bench. *Bounds v. State*, 688 So.2d 1362, 1372 (Miss. 1997) ("It was not until [1995] that a trial judge was required to give a limited instruction sua sponte"). The reasoning behind the requirement is because the "jury must be informed as to the limited purpose for which they are allowed to consider the other-crimes evidence." *Smith*, 656 So. 2d at 99.

¶32. The trial court did indeed weigh the evidence through Rule 404(b), specifically invoking the rule.

The trial court found "that th[e] evidence . . . would have probative value in establishing the initial crime . . . [since] it occurred immediately following the shooting." We allow proof of another crime or act when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences. *Duplantis v. State*, 644 So.2d 1235, 1246 (Miss. 1994). Proof of another crime or act is also admissible where necessary to identify the defendant, to prove motive, or to prove state of mind. *Id.* Moreover, "[e]vidence of other bad acts is admissible in order to tell a complete story to avoid confusion among jurors." *Simmons v. State*, 805 So.2d 452, 481 (Miss. 2001).

¶33. The trial court ruled that the evidence in the case sub judice was part of the "single transaction" of the murder of Felicia Newell, and there is no evidence that the trial court abused its discretion with the ruling. The testimony also adds weight to the identification of Brown as the murderer of Newell.

¶34. While the trial court did correctly apply the Rule 404(b) balancing test, the sua sponte limiting instruction was not given. The requirement of the limiting instruction first arose in *Smith*, where we reviewed a court's decision to allow evidence of the defendant's prior arrests for cocaine during his trial for possession and intent to distribute that same drug. 656 So. 2d at 97. Until that point our case law placed the burden on defense counsel to request a limiting instruction regarding prior bad acts. *Id.* at 100. Noting that "[p]ropensity is the only proscribed purpose" under Rule 404(b), the opinion expressed concern about "minimiz[ing] the risk that the jury will infer guilt from the previous conduct." *Id.* at 99-100. To guard against that prohibited inference, we adopted the requirement for the sua sponte instruction. *Id.* at 100. We have reversed and remanded for a new trial when the omission of the limiting instruction has occurred. *Robinson*, 735 So. 2d at 209-10.

¶35.    Yet *Smith* and its progeny place a great burden upon the trial court. In many instances a limiting instruction from the bench can actually focus a jury's attention on the sensitive testimony. Because a defendant might be prejudiced by such an instruction, we allowed trial counsel to actually object to the sua sponte instruction. *See Robinson v. State*, 735 So.2d 208, 210 (Miss. 1999). However, it is not per se prejudicial to a defendant if a jury simply hears an isolated instance of a crime or bad act in the course of a trial.

¶36.    The burden should properly be upon the trial counsel to request a limiting instruction. This was our rule before *Smith,* in accord with Rule 105 of the Mississippi Rules of Evidence. The rule provides in pertinent part that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." Miss. R. Evid. 105 (emphasis added). We struggled in *Smith* to require judges to issue the sua sponte ruling, since that would contradict "a rule so clear" as M.R.E. 105. 656 So.2d at 100. Today we abandon *Smith*'s requirement that a judge issue a sua sponte limiting instruction and return to the clear language of Rule 105. The rule clearly places the burden of requesting a Rule 404(b) limiting instruction upon counsel. The rule is controlling, and to the extent that *Smith* and its progeny contradict that plain language they are overruled.

¶37.    The trial court has the discretion to determine if the Rule 404(b) limiting instruction is appropriate given the totality of the circumstances. Otherwise, it is fundamentally unfair to place the burden on the trial judge absent an affirmative request on behalf of a party that such an instruction be given. Simply because the judge did not issue the instruction is not a reason for a mistrial; accordingly, there was no error in the trial below.

## 5.    Did the trial court improperly allow hearsay?

¶38.    Brown urges that hearsay was admitted over his objection, ultimately violating his right to confrontation of witnesses and costing him a fair trial. He cites three points in the record in support of this argument. The first exchange is when the State was asking Corey Johnson why he finally came forward about the crime.

> Q:    Now, at what point and why did you come forward and talk to law enforcement officers?
> A:    Well, because [Brown's] brother told me to come in—

At this point defense counsel objected. The State offered that the statement was "not for the truth of the thing stated, but it's the rationale for why he came forward." The trial court accepted that reasoning, and issued an instruction to the jury, instructing them on what hearsay was and why this statement was allowed. The judge informed the jury that the statement:

> is going to be allowed not for the purpose of proving the truth or untruth of what was said, but to explain this witness' actions. The statement that the other person said may or may not be the truth. That's not what's at issue. The issue is it is being allowed to explain this person's actions, the witness' actions. So, for that limited purpose, I'll overrule the objection.

¶39.    The admission or suppression of evidence is within the sound discretion of the trial judge and will not be reversed unless there is an abuse of that discretion. *See **Farris v. State***, 764 So.2d 411, 431 (Miss. 2000). We will only reverse under that standard if the admission of the evidence results in prejudice and harm to the opposing party, or if it adversely affects a substantial right of the party. ***Id.*** at 431.

¶40.    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted*." Miss. R. Evid. 801(c) (emphasis added). It is hornbook law that "[i]f a statement is offered to prove the fact that it was made, and not to prove the truth of its substance, it is not hearsay." Steven J. Allen, *Evidence*, *in* 4 Ency. of

Miss. Law § 34:66 (Jeffrey Jackson & Mary Miller eds. 2001); *see Hall v. State*, 691 So.2d 415, 420 (Miss. 1997) (statement not hearsay when not offered for the truth of the matter asserted, but to impeach); *Regency Nissan, Inc. v. Jenkins*, 678 So.2d 95, 100 (Miss. 1995) (mileage on oil sticker not offered to prove actual mileage of car, but to show knowledge of car dealership); *Moody v. RPM Pizza, Inc.*, 659 So.2d 877, 885 (Miss. 1995) (statements allowable when not for the truth of the matter asserted).

¶41.    *Moody* is instructive; there, a doctor testified to an oral statement made by his office manager in an attempt to explain notation on a document. *Id.* at 885. "The doctor mentioned the notation because . . . it was confusing without explanation . . . and the testimony objected to merely explained the notation's presence on the document." *Id.*

¶42.    That situation mirrors the one in the case at hand. Johnson was simply asked why he came forward to the police about a crime which had occurred many months before, and he explained by saying that Brown's "brother had told [him] to come in." As the trial court well noted, this was offered not for the truth of Brown's brother had said, but to explain why Johnson actually came forward. There is no error.

¶43.    The second point at which Brown alleges hearsay was improperly admitted is when Investigator Mark Berry was asked about the police interview with Ricky McLaurin and Darwin Brown. Right before Investigator Berry described the interview, defense counsel called for a bench conference and preemptively objected to any detailing of statements procured from McLaurin or Brown. The judge sustained the objection as hearsay.

¶44.    The conference recessed, the State then underscored the point to the witness: "You understand you can't say what somebody else said outside court." The witness agreed, and then went on to state "that [McLaurin and Brown] were frightened." The defense objected to the statement as hearsay, but the judge

14

overruled the objection, since the witness "can't state what their state of mind was . . . [but] [h]e can tell how they appeared." After the conference, the State asked Investigator Berry if he was "able to observe their physical appearance, mannerism, and actions?" The witness responded in the affirmative, and the State asked if based on that physical information if he "form[ed] any opinion with respect to their emotional state?" At this point Brown objected again, and was again overruled. The witness answered that "they were both frightened."

¶45.    Mississippi Rule of Evidence 803 provides that the then-existing mental, emotional, or physical condition of a declarant is "not excluded by the hearsay rule, even though the declarant is available as a witness." In pertinent part, this allows "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as . . . mental feeling, pain, and bodily health)." Miss. R. Evid. 803(3).

¶46.    The testimony of the witness falls within this well-recognized exception. *See Harris v. State*, 861 So.2d 1003, 1018-19 (Miss. 2003) (one witness' statement that another said "let's get it on" showed state of mind as to claim of mutual combat); *Sherrell v. State*, 622 So.2d 1233, 1237 (Miss. 1993) (witness could testify that a victim of murder asked her boyfriend to leave since she was scared of him because it showed her state of mind); *Parker v. State*, 606 So.2d 1132, 1139 (Miss. 1992) (witness was allowed to testify that a victim told her she was fearful of her boyfriend beating her because the testimony was "clearly a statement of her then existing state of mind or emotion"). There is no error.

¶47.    Brown also urges that allowing Investigator Berry to testify about the contents of a crime laboratory report was impermissible hearsay. Because there was no contemporaneous objection, this issue is procedurally barred. *Foster*, 639 So.2d at 1270. Notwithstanding that bar, we consider the issue.

15

¶48. The report falls firmly within the hearsay exception of Mississippi Rule of Evidence 803(8), which provides in pertinent part that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report" are excepted from the prohibition on hearsay. *See* ***Buck v. Lowndes County Sch. Dist.***, 761 So.2d 144, 149 (Miss. 2000) (letters from stage agencies to school district regarding noncompliance of testing procedures held admissible under Rule 803(8)); ***Doolie v. State***, 856 So.2d 669, 673 (Miss. Ct. App. 2003) (public driving record held admissible under Rule 803(8)). Accordingly, this issue has no merit.

## 6. Did the trial court allow a witness to give an incompetent expert opinion?

¶49. Brown urges that allowing Investigator Berry to comment that McLaurin and Brown were frightened was tantamount to his offering expert testimony as "an expert in behavioral psychology." Because there was no contemporaneous objection to the testimony on this ground, the issue is procedurally barred. ***Foster***, 639 So.2d at 1270. Notwithstanding the bar, we consider the issue.

¶50. The admissibility of evidence is left to the discretion of the trial judge; we will not reverse unless there was an abuse of that discretion. *See* ***Harris v. State***, 731 So.2d 1125, 1130 (Miss. 1999). Mississippi Rule of Evidence 701 governs the testimony of lay witnesses, and in pertinent part it limits such testimony "to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

¶51. Laypersons may testify on such a wide variety of topics as the speed of a moving car (***Moore v. State***, 816 So.2d 1022, 1028 (Miss. Ct. App. 2002)), whether a particular file document is present on

a computer's hard drive, (***Boone v. State***, 811 So.2d 402, 405-06 (Miss. Ct. App. 2001)), and whether a person is drunk (***Havard v. State***, 800 So.2d 1193, 1196-97 (Miss. Ct. App. 2001)). A person does not have to be a behavioral psychologist to determine if another is frightened or scared, emotions commonly experienced at one time or another by everybody. Accordingly, the testimony was not improper, and this issue is wholly without merit.

### 7.    Does the perjury of Corey Johnson mandate a new trial?

¶52.    The testimony of Corey Johnson against Brown was a key factor in the conviction. After the trial was over, new evidence was found that proved Johnson had perjured himself regarding his place of employment. Johnson lied at the very beginning of the State's direct examination of him:

> Q:    Are you employed?
> A:    Yes, sir.
> Q:    And where do you work?
> A:    Sanderson Farms.
> ***
> Q:    And how long have you been employed with Sanderson Farms?
> A:    About four years altogether.

After evidence was obtained regarding Johnson's work history, Brown moved to set aside the verdict and for a new trial based upon the newly discovered evidence. At the hearing, Johnson was cross-examined and admitted he had lied about his employer in the first trial:

> Q:    . . . Mr. Johnson, was that true or was that not true?
> A:    Well, it was not true then.

Johnson attempted to cover up the truth at the evidentiary hearing, stating that he worked at Sanderson Farms up until the night before he testified on June 19, 2002, and to provide a reason why he was discharged from the company.

> A:    . . . I was currently employed [at Sanderson], but when I had to come down here
>       for this trial, I got fired, cause I didn't have no excuse, and I didn't have no way

17

> back and forth to work like that.
>
> ***
>
> Q:    . . . when was the last time you worked at Sanderson's Farm?
> A:    I really don't recall.  I can't remember that far back.
> Q:    Was it days before?
> A:    I recall like the night before.  That was my last night working there.
> Q:    Your testimony is you were employed at Sanderson's Farm up until the day before
>        this trial started?
> A:    Yes, sir.

That position quickly collapsed, as defense counsel showed Johnson a letter from Sanderson Farms stating that he had not been employed there for six years—since 1996.  Johnson then admitted that he had been "mistaken about the year."  Defense then confronted Johnson with the excuse that he had been fired for coming to the trial; Johnson said that he had been "fired for missing days."

¶53.    The trial court refused to set aside the verdict because the perjured testimony concerned a collateral issue and because Johnson had been extensively cross-examined on the stand.  Perjured testimony does not in itself give rise to a new trial. *Moore v. State*, 508 So.2d 666, 668 (Miss. 1987).  The determination of whether a new trial should be granted is made by the trial judge on a case-by-case basis, taking into account all the relevant facts and circumstances.  *Id.* at 668.  In making the decision, the trial judge must first look to see whether the petitioner has sufficiently proved the underlying allegations of perjury.  *Id.* Whether the newly discovered evidence presented will likely change the outcome if a new trial were granted is a determination left to the discretion of the trial court, and that decision will not be reversed absent an abuse of that discretion. *Williams v. State*, 669 So.2d 44, 53 (Miss. 1996).

¶54.    If perjury was committed, the defendant will be entitled to a new trial only if four factors are met.  First, it must appear that the perjured testimony will probably change the result if a new trial is granted.  Second, the perjury must have been discovered after the trial.  Third, the perjury must not have been discoverable before the trial by the exercise of due diligence.  Fourth, the perjury must be on an issue that

18

is material to the case and not be merely cumulative or impeaching. *See Meeks v. State*, 781 So.2d 109, 112-13 (Miss. 2001); *Smith v. State*, 492 So.2d 260, 263 (Miss. 1986), *superseded by statute on other grounds by McClendon v. State*, 539 So.2d 1375, 1377 (Miss.1989); *Townsel v. State*, 228 Miss. 110, 118-19, 87 So.2d 481, 484 (1956).

¶55.    The issue can be decided on the fourth factor, the same the trial court employed. Johnson's place of employment has absolutely nothing to do with his testimony that Brown murdered a woman in cold blood or his allegation that Brown threatened his life over the matter. The perjury did not touch an issue material to the case. It was not an abuse of discretion for the trial court to determine that the perjury did not warrant a new trial. This issue is without merit.

### 8.    Was the conviction supported by the evidence?

¶56.    Brown urges that his conviction was unsupported by the evidence introduced at trial. Our authority to interfere with the jury's verdict is limited. We first consider all the evidence, presented by both sides, in the light most consistent with the verdict. The prosecution is afforded the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. *See Hart v. State*, 637 So.2d 1329, 1340-41 (Miss. 1994).

¶57.    The State produced three independent witnesses who testified against Brown. Corey Johnson offered eyewitness testimony that he was with Brown when Newell was murdered and that Brown threatened him with death if he told anyone. Johnson also testified that Brown had used a nine-millimeter weapon, the same type of weapon that the State's expert witness testified had been used to kill Newell.

19

¶58. The State also offered testimony from Donald Crosby that Brown had bragged about killing a woman. The testimony of James Bigler pinpointed two males at the scene when Newell was killed, corroborating Johnson's story.

¶59. Accepting the testimony of the State's witnesses as true and considering all the evidence in the light most favorable to the State's theory of the case, there is sufficient evidence in the record from which a jury could find beyond a reasonable doubt that Brown indeed murdered Newell.

**9. Did the indictment fail to charge a death-penalty eligible offense?**

¶60. Brown urges that the prosecution must include in the indictment any aggravating factors which it intends to prove at the sentencing phase of the trial, and that because his indictment did not include a statutory aggravating factor or a mens rea element it is constitutionally infirm.

¶61. This is not our law. The major purpose of any indictment is to furnish the accused a reasonable description of the charges so an adequate defense might be prepared. *See Williams v. State*, 445 So.2d 798, 804 (Miss. 1984). Accordingly, *all* that is required in the indictment is a clear and concise statement of the elements of the crime charged. *Id.* at 804. Our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment. *Williams*, 445 So. 2d at 805. Thus, *every time* an individual is charged with capital murder they are put on notice that the death penalty may result. *See Stevens v. State*, 867 So.2d 219, 227 (Miss. 2003). This is the law of our state.

¶62. Brown urges that the United States Supreme Court cases of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), bolster his position. They do not. We have previously discussed these cases

20

at length and concluded that they address issues wholly distinct from our law, and do not address indictments at all. *See Stevens*, 867 So. 2d at 225-27. This issue is without merit.

### 10. Was it error to allow the State to use pecuniary gain to elevate the crime to capital murder and as an aggravating factor?

¶63. Brown argues that using the element of "pecuniary gain" as an aggravator in his sentencing improperly duplicates an element of the offense that elevated to the crime to capital murder level. He offers that without this "doubling," he would have received a life sentence.

¶64. The United States Supreme Court has determined that "the fact that [a] aggravating circumstance duplicate[s] one of the elements of the crime does not make [a] sentence constitutionally infirm." *Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988). We have repeatedly relied upon this principle in support of our capital sentencing scheme. *See Simmons v. State*, 805 So.2d 452, 507-08 (Miss. 2001); *Brown v. State*, 690 So.2d 276, 295-96 (Miss. 1996); *Ballenger v. State*, 667 So.2d 1242, 1260-61 (Miss. 1995).

¶65. Brown urges that in light of *Apprendi* and *Ring*, discussed *supra* in section nine, that we need consider our sentencing scheme. We do not. Neither *Apprendi* nor *Ring* discussed or even *mentioned* the *Lowenfield* case, which allows the doubling of elements. The Supreme Court has also repeatedly underscored its commitment to *Lowenfield*. *See Williams v. Taylor*, 529 U.S. 362, 393 n.161, 20 S.Ct. 1495, 1513 n.16, 146 L.Ed.2d 389, 389 n.16 (2000) ("an aggravating circumstance may duplicate an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed by the definition of the offense itself"); *Loving v. United States*, 517 U.S. 748, 755, 116 S.Ct. 1737, 1742, 135 L.Ed.2d 36 (1996). The duplication is wholly constitutional, and thus this assignment of error is without merit.

21

**11.     Was it error to allow the jury to consider Brown's previous conviction as an aggravating factor?**

¶66.     Brown argues that the trial court erred when it instructed the jury that it could consider the fact that "[t]he Defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person" as an aggravating factor.  Brown had a previous conviction of manslaughter, which is not a capital offense.  He offers that this instruction might have indicated to the jury that he had committed a previous capital offense, thus misleading them and improperly resulting in a harsher sentence then he deserved.

¶67.     We disagree.  We have approved an aggravation instruction that included nearly exact language: "'convicted of another capital offense or of a felony involving the use or threat of violence." **Bell v. State**, 725 So.2d 836, 857 (Miss. 1998).  We decided that "[t]his disjunctive language does not render the aggravator invalid." **Id.** at 857.  In the same line of thought, we have "upheld the use of the disjunctive 'heinous, atrocious, or cruel' aggravator . . . ." **Woodward v. State**, 726 So.2d 524, 540 (Miss. 1997) (examining the approval of the United States Supreme Court of disjunctive instructions).

¶68.     Brown urges that he "has no way of knowing how many jurors may have relied on an invalid aggravating circumstance in deciding to impose the death sentence."  We found that "Bell's argument that 'some of the jury may have been thinking capital murder was the aggravator' fail[ed]" in light of our case law, and in accord with that finding, Brown's argument fails as well.  725 So.2d at 857.  This assignment of error is without merit.

**12.     Did the trial court err in excluding two jury instructions about aggravation and mitigation?**

¶69.     Brown proposed two jury instructions for sentencing (among others) that were refused by the trial court.  SD-9 read:

> You are to begin your deliberations with the presumption that there are no aggravating circumstances that would warrant a sentence of death, and the presumption that the appropriate punishment in this case would be life imprisonment. These presumptions remain with Mr. Brown throughout the sentence hearing, and can only be overcome if the prosecution convinces each one of you, *beyond a reasonable doubt*, that death is the only appropriate punishment.

(emphasis added). SD-10 was similar and read:

> You are to presume that [t]here are no aggravating circumstances that would warrant a sentence of death. That presumption may be abandoned if and only *if the evidence convinces you beyond a reasonable doubt that one or more of the particular specified aggravating circumstances exist.*

(emphasis added). On a review of jury instructions, we do not isolate the individual instruction attacked, but rather we read all of the instructions as a whole. *Payne v. Rain Forest Nurseries, Inc.*, 540 So.2d 35, 40 (Miss. 1989). "Defects in specific instructions do not require reversal where all instructions taken as a whole fairly--although not perfectly--announce the applicable primary rules of law." *Id.* at 40.

¶70.    Here, the jury was instructed that they "must apply . . . reasoned judgment as to whether this situation calls for life without eligibility for parole or whether it requires the imposition of death, in light of the totality of circumstances present" in instruction S-1. They were cautioned that "mere probabilities are not sufficient to warrant a finding of an aggravating circumstance" by S-4. That instruction also read:

> It is not sufficient that the aggravating circumstances are supported by a preponderance of evidence. It also is not sufficient that it may be more probable than not that the aggravating circumstance exists. Before you may find an aggravating circumstance, *the prosecution must convince you of its existence beyond a reasonable doubt.* If the prosecution has failed to produce such proof, it is your sworn duty <u>not</u> to find the aggravating circumstance.

(italics added & underline in original). Instruction S-13 also repeatedly emphasized that the standard was "beyond a reasonable doubt" and that there was an option for life imprisonment.

23

¶71. The standard of "beyond a reasonable doubt" was articulated with much more caution and emphasis in the instructions given to the jury than in Brown's rejected instructions. "A trial judge is under no obligation to grant redundant instructions, and "[t]he refusal to grant an instruction which is similar to one already given does not constitute reversible error." *Montana v. State*, 822 So.2d 954, 961 (Miss. 2002). The rejected instructions were redundant; accordingly, they were unnecessary. There is no error.

¶72. As to the rest of the instruction, we have repeatedly said that we reject the "proposition that a defendant should go into the sentencing phase with a presumption that life is the appropriate punishment." *Watts v. State*, 733 So.2d 214, 241 (Miss. 1999) (internal quotes & citation omitted); *see also Jackson v. State*, 684 So.2d 1213, 1233 (Miss. 1996). We adhere to that standard today. Because the judge did not abuse his discretion in excluding the proposed instructions, this assignment of error is without merit.

### 13. Did the trial judge err in instructing the jury that they could not consider mere sympathy?

¶73. The trial court instructed the jury that they "should consider and weigh any aggravating and mitigating circumstances . . . but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feelings." Brown argues this instruction constituted error because it damaged his presentation of mitigating factors.

¶74. It does not. It is true that "a jury may not be instructed to disregard, *in toto*, sympathy." *Pinkney v. State*, 538 So.2d 329, 351 (Miss. 1988), *vacated on other grounds by Pinkney v. Mississippi*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990). A jury may properly consider mitigating evidence—including sympathy—when it deliberates and renders a verdict.

¶75. Yet a jury may not consider *only* sympathy, or passion, or prejudice. That is the warning this instruction provides to a jury, and each time we have considered this instruction we have held accordingly. An instruction that does not inform the jury that it must *completely* disregard sympathy and that leaves the option to vote for or against the death penalty is a proper statement of law. *See Blue v. State,* 674 So.2d 1184, 1225 (Miss. 1996); *Willie v. State,* 585 So.2d 660, 677 (Miss. 1991). The given instruction does not make the error of telling a jury to completely disregard sympathy; it is therefore valid. *See also Flowers v. State,* 842 So. 2d 531, 563 (Miss. 2003). Because the instruction provided to the jury was routine and accurate, this issue is without merit.

**14.    Was it error for the trial court to refuse to instruct the jury that aggravating circumstances must beyond a reasonable doubt outweigh the mitigating circumstances?**

¶76. Brown urges that it was error for the trial court to refuse an instruction that provided jurors "must be convinced beyond a reasonable doubt that the totality of the aggravating circumstances outweigh the totality of the mitigating circumstances" before levying the death penalty. We have repeatedly rejected this argument. *See Simmons v. State,* 805 So.2d 452, 500 (Miss. 2001); *Edwards v. State,* 737 So.2d 275, 314 (Miss. 1999); *Wiley v. State,* 484 So.2d 339, 352 (Miss. 1986), *overruled on other grounds by Willie v. State,* 585 So.2d 660 (Miss.1991). For the "rule of this Court is that the jurors are required to find the existence of each aggravating circumstance beyond a reasonable doubt, but the jury is *not* required to find that the aggravating circumstances beyond a reasonable doubt outweigh the mitigating circumstances following the statute." *Wiley,* 484 So.2d at 352 (emphasis added).

¶77.   Nonetheless, Brown offers that *Apprendi* and *Ring* compel a different result. They do not. They do illustrate the Supreme Court's continuing struggles with the complicated systems of capital punishment found in our country.

¶78.   *Apprendi* stands for the proposition that our constitutional "rights indisputably entitle a criminal defendant to 'a jury determination that [the defendant] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" 530 U.S. at 477 (quoting ***United States v. Gaudin***, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)).   In *Apprendi*, a judge had made the determination that an aggravating factor was present, elevating the defendant's sentence to death.  ***Id.*** at 471.  The Supreme Court determined that only a jury could make that decision.  ***Id.*** at 478.

¶79.   *Ring* is a sister case to *Apprendi* and stands for the proposition that "[c]apital [murder] defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  536 U.S. 584, 589.  That point was critical because Arizona, like a handful of other states, allowed a judge to determine the presence of aggravating and mitigating circumstances.  ***Id.*** at 594, 597.  As in *Apprendi*, the Supreme Court determined that only a jury could make that decision.  *Ring*, 536 U.S. at 609.

¶80.   In addition, our Mississippi sentencing system was noted approvingly in *Ring*, since "[u]nlike Arizona . . . [we have] responded to th[e] Court's Eighth Amendment decisions requiring the presence of aggravating circumstances in capital cases by entrusting those determinations to the jury."  ***Id.*** at 607-08, 609 n.6 (citing Miss. Code Ann. § 99-19-101).

¶81.   Brown wishes *Apprendi* and *Ring* to say what they simply do not.  Those cases simply fulfill the Sixth Amendment's command that "[i]n all criminal prosecutions, the accused shall enjoy the right to a

26

speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend VI (emphasis added). In Mississippi the sentencing "proceeding shall be conducted by the trial judge before the trial jury," and that fully distinguishes *Apprendi* and *Ring* from the situation at hand. *See* Miss. Code Ann. § 99-19-101. Brown's sentence was not determined by a judge, but by a jury of his peers. Accordingly, this issue has no merit.

**15.     Did the trial court err in not instructing the jury that there were three sentencing options available?**

¶82.     Brown requested that the jury be instructed there were three statutory sentencing options: death, life without parole, and life with the possibility of parole, as detailed in Miss. Code Ann. § 97-3-21. The judge refused, because under the terms of capital murder Brown will never be eligible for parole. Accordingly, the jury was only given the options of death or life without parole. This is in accordance with Miss. Code Ann. § 47-7-3(1)(f), which states that "[n]o person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment . . . ."

¶83.     We have previously rejected Brown's argument, since "[t]he reading of these statutes together indicate that a defendant on trial for capital murder may only be sentenced to death or life imprisonment without the eligibility of parole." *Flowers*, 842 So.2d at 557. "By giving only the sentencing options of death or life imprisonment without parole, the trial judge properly gave the jury all the instructions that were needed." *Id.* at 557; *see also Pham v. State*, 716 So.2d 1100, 1103-04 (Miss. 1998). The instructions were thus properly given, and this issue is without merit.

**16.     Do cumulative errors warrant reversal?**

¶84.     There were no errors in the trial below warranting the reversal of Brown's conviction or sentence; accordingly, there are no cumulative errors.

27

### 17. Proportionality of the death sentence

¶85. After the death penalty has been imposed by a jury and submitted to us on appeal, we review its validity under four guidelines established by the Legislature. We must determine:

> Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor . . . Whether the evidence supports the jury's ... finding of a statutory aggravating circumstance . . . [and] Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and . . . Should one or more of the aggravating circumstances be found invalid on appeal, [we] shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.

Miss.Code Ann. § 99-19-105 (Rev. 2000).

¶86. We have carefully weighed and examined these guidelines in the pages above, and after reviewing the entire record in this appeal as well as the death penalty cases listed in the appendix, we conclude that the sentence of death imposed upon Xavier Brown was not imposed under the influence of passion, prejudice, or any other factor. We also find that the evidence is more than sufficient to support the jury's finding of statutory aggravating circumstances. Additionally, the sentence is not excessive or disproportionate to factually similar cases. Lastly, the mitigating circumstances did not outweigh the aggravating circumstances of the crime, and the jury did not consider any invalid aggravating circumstances. We affirm the sentence of death for Xavier Brown.

### CONCLUSION

¶87. Because there were no reversible errors in the trial, the conviction and sentence are affirmed.

¶88. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON, AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

28

# APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Scott v. State,* ---So.2d --- (Miss. 2004).

*Lynch v. State,* --- So.2d --- (Miss. 2004).

*Dycus v. State,* 875 So.2d 140 (Miss. 2004).

*Byrom v. State,* 863 So.2d 836 (Miss. 2003).

*Howell v. State,* 860 So.2d 704 (Miss. 2003).

*Howard v. State,* 853 So.2d 781 (Miss. 2003).

*Walker v. State,* 815 So.2d 1209 (Miss. 2002). *following remand.

*Bishop v. State,* 812 So.2d 934 (Miss. 2002).

*Stevens v. State,* 806 So.2d 1031 (Miss. 2002).

*Grayson v. State,* 806 So.2d 241 (Miss. 2002).

*Knox v. State,* 805 So.2d 527 (Miss. 2002).

*Simmons v. State,* 805 So.2d 452 (Miss. 2002).

*Berry v. State,* 802 So.2d 1033 (Miss. 2001).

*Snow v. State*, 800 So.2d 472 (Miss. 2001).

*Mitchell v. State,* 792 So.2d 192 (Miss. 2001).

*Puckett v. State,* 788 So.2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So.2d 639 (Miss. 2001).

*Jordan v. State,* 786 So.2d 987 (Miss. 2001).

*Manning v. State,* 765 So.2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So.2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999).

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999).      *remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

***Shell v. State***, 554 So. 2d 887 (Miss. 1989), ***Shell v. Mississippi,*** 498 U.S. 1 (1990) reversing, in part, and remanding, ***Shell v. State***, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d  165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

***Pinkney v. State***, 538 So. 2d 329 (Miss. 1989), ***Pinkney v. Mississippi***, 494 U.S. 1075 (1990) vacating and remanding ***Pinkney v. State***, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

***Clemons v. State***, 535 So. 2d 1354 (Miss. 1988), ***Clemons v. Mississippi***, 494 U.S. 738 (1990) vacating and remanding, ***Clemons v. State***, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

## DEATH CASES AFFIRMED BY THIS COURT

## (continued)

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).
*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.
*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So.  2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

   \* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

# DEATH CASES REVERSED AS TO GUILT PHASE
## AND SENTENCE PHASE

*Flowers v. State,* 842 So.2d 531 (Miss. 2003).

*Randall v. State,* 806 So. 2d 185 (Miss. 2002).

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

**DEATH CASES REVERSED AS TO GUILT PHASE**
**AND SENTENCE PHASE**
(continued)

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

**DEATH CASES REVERSED
AS TO PUNISHMENT AND REMANDED
FOR RESENTENCING TO LIFE IMPRISONMENT**

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi*, 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State* 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding, *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi,* 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

**DEATH CASES REVERSED AS TO
PUNISHMENT AND REMANDED FOR A NEW TRIAL
ON SENTENCING PHASE ONLY**
**(continued)**

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State***, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 F.2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).  * Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.